THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RYAN RATLIFF,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., ROB JEFFREYS, J.B. PRITZKER, GLEN BABICH, DR. MEYERS, MRS. WISE, MRS. LUKING, DEE DEE BROOKHART, MRS. CUNNINGHAM, MR. HINKLE, MRS. TATE, JOHN DOE #1 (MAJOR), ASSISTANT WARDEN JANE DOE, JOHN DOE #2 (LIEUTENANT), JOHN DOE #3 (SERGEANT), JOHN DOE #4 (CORRECTIONAL OFFICER), JANE DOE #5 (NURSE), JANE DOE #6 (NURSE), JANE DOE #7 (NURSE), JOHN DOE #8 (LIEUTENANT), JOHN DOE #9 (SERGEANT), JOHN DOE #10 (CORRECTIONAL OFFICER), JOHN DOE #11 (CORRECTIONAL OFFICER), JOHN DOE #12 (NURSE), WARDEN BROWN, MRS. COLLINS, and ILLINOIS DEPARTMENT OF CORRECTIONS,<br><br>　　　　Defendants. | Case No. 3:24-cv-01598-GCS |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

　　　Plaintiff Ryan Ratliff, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the

Complaint, Ratliff alleges that the defendants failed to properly treat his back and shoulder pain. He asserts claims against the defendants under the First, Eighth, and Fourteenth Amendments, as well as Illinois state law.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

In his Complaint, Ratliff alleged that prior to arriving at Lawrence Correctional Center, he was diagnosed with issues with his L4-5 discs, L5 lateral recess stenosis, and disc herniation. (Doc. 1, p. 15). Ratliff also suffers from shoulder pain. *Id*. at p. 11. In January 2023, he saw a neurosurgeon who recommended spinal cord injections for pain management. *Id*. at p. 6. But from January 2023 until the present, he alleges that he has been denied proper care for his condition. *Id*.

Ratliff alleges that he was told that the delay in scheduling his injections was due to the healthcare unit being understaffed. (Doc. 1, p. 7). He attributes the understaffing to

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 8) and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between the IDOC, Wexford Health Sources, Inc., and this Court.

Wexford Health Sources, Inc. ("Wexford"), Dr. Babich, and Dr. Meyers because oversee the healthcare unit and are responsible for ensuring adequate care and treatment. *Id*. The understaffing caused Ratliff's call passes to be cancelled and the delay and denial of his requested treatment. *Id*. He also alleges that Wexford trains its staff to deny adequate pain medication based on its provider handbook. *Id*. at p. 8. He alleges that staff are directed to take into consideration the length of an inmate's sentence when prescribing a course of treatment. *Id*. Ratliff alleges this practice has led to the denial of his requests for spinal injections because he has a short sentence. *Id*. at p. 9. Ratliff also alleges that he is being denied adequate testing and consultations with outside doctors due to policies and practices implemented by Wexford to save the corporation money. *Id*.

Ratliff further alleges that Rob Jeffreys, Dee Dee Brookhart, Dr. Meyers, Dr. Babich, Mrs. Cunningham, Assistant Warden Jane Doe, Governor Pritzker, Jane Doe Nurses #'s 5, 6, 7, and 12, Nurse Practitioner Wise, and Nurse Practitioner Luking were all aware of the healthcare unit's understaffing at Lawrence due to several lawsuits about medical care at IDOC facilities. (Doc. 1, p. 10). Ratliff maintains that he is a plaintiff in two of those lawsuits, *Lippert v. Jeffreys*, Case No. 10-4603 (N.D. Ill.) and *Rasho v. Baldwin*, Case No. 07-cv-1298-MMM (C.D. Ill.). *Id*. Once the defendants became aware of Ratliff's medical needs, he alleges that they had a duty to ensure that he received adequate medical care, but they instead turned a blind eye to his needs. *Id*. at p. 11. He has submitted grievances and put in sick call slips asking for testing, pain management, and outside care for his back and shoulder pain, but the defendants ignore his requests. *Id*. Ratliff and his family also wrote letters to the warden, director, and governor. *Id*. at p. 12. His grievances were

deemed a non-emergency by the warden. *Id*. Ratliff alleges that he is being retaliated against because after he sent out communications to the court, security and medical staff began writing untrue tickets, harassing him, assaulting him, and destroying his property. *Id*. He alleges several staff told him that he would be left alone if he stopped writing grievances and letters. *Id*. at p. 13.

In March 2023, while in restrictive housing, Ratliff complained to John Doe #8 (lieutenant), John Doe #9 (sergeant), and John Doe #10 about his ceiling leaking water. (Doc. 1, p. 13). Ratliff banged on the cell door until he got the attention of John Doe #8 and showed the lieutenant the water on the floor and the ceiling. *Id*. But John Doe #8 refused to do anything about the conditions, as he merely questioned whether Ratliff would drown and then walked away. *Id*. The next morning, Ratliff got out of bed and slipped on the water, which resulted in him falling and injuring his back. *Id*. On March 22, 2023, he was taken to the emergency room. *Id*.

On June 24, 2023, Ratliff saw Dr. Meyers for his chronic spinal injuries. (Doc. 1, p. 14). Although Dr. Meyers had the authority to schedule Ratliff to be sent out for the spinal injections previously recommended by a neurosurgeon, Dr. Meyers refused to schedule a spinal injection. *Id*. Ratliff alleges that Dr. Meyers acted pursuant to Wexford's cost-saving policies, despite Ratliff's severe pain. *Id*. Instead, Dr. Meyers informed Ratliff that his x-rays from his slip and fall were normal and Meyers denied him any additional treatment. *Id*.

Ratliff filed a grievance about his care, but Counselor Tate refused to investigate the issues. Tate stated that Ratliff was already referred to a neurosurgeon for a spinal

injection and the prison was just waiting on the next available date for the appointment. (Doc. 1, p. 14-15). Ratliff later obtained his medical records and verified that he was not scheduled for an injection. He alleges that Tate lied about his appointment. *Id*. at p. 15.

Ratliff also alleges that he is a qualified individual under both the Rehabilitation Act and Americans with Disabilities Act due to his chronic back issues. (Doc. 1, p. 15). But Dr. Babich, Dr. Meyers, Nurse Practitioner Wise, and Nurse Practitioner Luking denied his requests for a low gallery permit, low bunk permit, walking assistance, and referral to a back specialist for pain management. *Id*. at p. 16. He alleges that each medical professional told him that his injuries were not severe enough and his x-rays were normal. *Id*. Ratliff alleges that he has numbness in his legs and excruciating pain that has led to numerous falls, including once down a flight of stairs. *Id*.

On September 12, 2023, Ratliff saw Nurse Jane Doe #5 in restrictive housing. (Doc. 1, p. 18). Ratliff had submitted a sick call request for shoulder pain. *Id*. He complained that he was unable to lift his arms to wash his face, brush his teeth, or wipe himself. *Id*. But Jane Doe #5 refused to provide him care, noting that the prison was understaffed. She also noted that Ratliff wanted care after writing numerous grievances against medical staff. *Id*. Jane Doe #5 failed to take Ratliff's vitals and told him there was nothing medical staff could do for him. *Id*. at p. 19.

On November 8, 2023, Ratliff saw Nurse Practitioner Wise for his pain and requested a cane or walker to assist him. (Doc. 1, p. 19). He also wanted a low gallery/low bunk permit renewed because it had recently expired. *Id*. Ratliff alleges that Wise viewed him as a nuisance because he wrote letters to the warden and director of nursing about

his lack of medical care. *Id*. He also alleges that Wise previously threatened him. Ratliff inquired as to whether he had been scheduled for a spinal injection and Wise informed Ratliff that she called the place, but they kept her on hold, and she had to hang up. *Id*. at p. 20. Wise also failed to renew his permits, noting that the doctor had to renew the permits. *Id*. She also denied his request for a cane. *Id*.

On December 20, 2023, Ratliff began experiencing severe back pain. He could not stand, and he experienced pain shooting down both legs. He tried to go down the stairs to seek medical care, but his legs gave out and he fell down the stairs. (Doc. 1, p. 21). Ratliff was transported to the local emergency room where a doctor treated his injuries and recommended that he immediately see a specialist. *Id*. Upon his return, Dr. Meyers, Nurse Practitioner Wise, and Nurse Practitioner Luking informed Ratliff that his x-rays were normal and there was nothing wrong with him. They ordered Ratliff back to his same upper-level cell. *Id*. They refused to give him a low gallery permit. *Id*. at p. 22.

On December 25, 2023, Ratliff was in the recreational yard when he fell due to his legs giving out. He injured his butt, back, and shoulders. (Doc. 1, p. 22). John Doe #8 (lieutenant), John Doe #9 (sergeant), and John Doe #10 (correctional officer) saw Ratliff lying on the ground but cleared the yard before calling for help. *Id*. They questioned whether he was faking, but eventually called a Code 3 Alarm for medical care. Jane Doe #6 and Jane Doe #7 brought a wheelchair. *Id*. Security staff picked Ratliff up off the ground and placed him in the wheelchair. He was then wheeled to the healthcare unit and placed on a gurney. *Id*. at p. 23. The nurses said they would call Dr. Meyers and the nurse practitioners, but later told Ratliff that Dr. Meyers said his earlier x-rays were

normal and there was nothing wrong with him. *Id*. John Doe #1 (Major) ordered Ratliff back to his housing unit. John Doe #1 threatened to take Ratliff to segregation if he refused the order to return to his housing unit. *Id*. Ratliff was eventually taken back to the housing unit in a wheelchair. *Id*.

Ratliff alleges that he submitted so many requests for medical care, grievances, and complaints that Nurse Practitioner Luking began to conspire with security staff to retaliate against Ratliff. (Doc. 1, p. 24). In January 2024, Ratliff saw Luking for a sick call but at the nurses' station, security staff surrounded him to intimidate him. *Id*. He alleges that security staff stated they were aware of his grievances, complaints, and phone calls from Ratliff's family. He inquired about his spinal injection with Luking, and she questioned when he was scheduled to be released from prison because "you can get all the treatment you want out there." *Id*. at p. 25. She also noted that the guards told her that Ratliff was faking his injuries and that he walks perfectly fine when not in the presence of staff. *Id*. Luking indicated that she would not schedule the spinal injections but would instead order an MRI because she did not believe that he was injured. *Id*. Ratliff notes that he already had referrals from the specialist recommending the spinal injections. Ratliff alleges that Wexford, Dr. Babich, and Dr. Meyers allowed Luking, a nurse practitioner, to decide on a course of treatment and allowed her to retaliate against him. *Id*. at p. 26.

After Ratliff returned to his cell, Correctional Officer Hinkle approached to search his cell and collect Ratliff's prescribed medications. (Doc. 1, p. 26). Despite Ratliff being on the toilet, Hinkle opened the cell door and made a comment about Ratliff having a

large butt. *Id*. at p. 27. Ratliff was humiliated and embarrassed. *Id*. He then told Ratliff that Luking wanted the guards to search his cell. *Id*. Hinkle noted that the search could have been avoided if Ratliff stopped filing grievances and complaints against them. *Id*. Ratliff alleges that Luking and Hinkle conspired to retaliate against him because of his complaints.

On February 25, 2024, Ratliff fell in his cell, hitting his head on the metal heater. (Doc. 1, p. 29). He called for help, and Hinkle and John Doe #11 (correctional officer) approached his cell and accused Ratliff of faking his injuries. *Id*. They noted that Ratliff filed grievances and complaints about being mistreated and staff did not believe Ratliff's statements anymore. *Id*. John Doe #11 then jammed the toe of his shoe into Ratliff's crotch, noting that if Ratliff was in so much pain, he would not feel the correctional officer's actions. *Id*. at p. 30. Ratliff yelled out and Sergeant Collins approached his cell in response to Ratliff's screams. *Id*. Hinkle informed Collins that Ratliff was faking and noted that Ratliff filed grievances on them. *Id*. Collins laughed, instructed the officers to close Ratliff's cell door, and noted "let him die for all I care." *Id*. Ratliff continued to scream for help and John Doe #12 (Nurse) approached his cell. *Id*. Despite informing the nurse that he had fallen, was dizzy, and in pain, John Doe #12 merely took Ratliff's vitals and noted that his previous x-rays were normal. *Id*. at p. 31. The unknown nurse noted that there was not much he could do for Ratliff and that he would be fine. *Id*.

## PRELIMINARY DISMISSALS

Ratliff identifies the IDOC as a defendant in the case caption, but the IDOC is an agency of the state and immune from liability. *See, e.g., Nunez v. Indiana Dept. of Child*

*Services*, 817 F.3d 1042, 1044 (7th Cir. 2016) (stating that "[t]he Eleventh Amendment grants states immunity from private suits in federal courts without their consent. An agency of the state receives this same immunity."); *see also de Lima Silva v. Department of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019).

Ratliff also alleges that several high-ranking officials are liable for the lack of medical care he received for his back pain. He alleges that Dr. Babich oversaw the healthcare unit and allowed staff to provide improper care. But Dr. Babich cannot be held liable based on *respondeat superior*, or supervisory, liability because it is not recognized under Section 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Further, there are no allegations suggesting that Dr. Babich was personally involved in Ratliff's care. Although Ratliff alleges that Dr. Babich should have been aware of deficiencies in the care provided at the prison due to several lawsuits about medical care, there are no allegations to suggest that he was personally involved in Ratliff's care in 2023 and 2024. Thus, any claim against Dr. Babich is **DISMISSED without prejudice**.

Similarly, there are no allegations to suggest that J.B. Pritzker, IDOC Director Rob Jeffreys, or Warden Dee Dee Brookhart were aware of Ratliff's need for medical care or were personally involved in his care. Ratliff alleges that he and his family wrote letters to these officials, but there are no allegations to suggest that they received those correspondence or were aware of Ratliff's need for care. *See, e.g., Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known"). Nor can they be liable simply as high-ranking supervisors. Further, to the

extent that Ratliff alleges these officials reviewed and denied grievances that he submitted, those allegations also fail to state a claim. *See, e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (stating that "the alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *see also George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007). Thus, any claims against Pritzker, Jeffreys, and Warden Brookhart are **DISMISSED without prejudice**.

Ratliff also alleges that several other staff and officials at the prison were aware of understaffing and issues with medical care due to pending lawsuits. His allegations include Mrs. Cunningham, Jane Doe Assistant Warden, Warden Brown, Jane Doe Nurses #'s 6, 7, 12, and John Doe #'s 2, 3, 4. (Doc. 1, p. 10, 17). But there are no allegations to suggest they were aware of Ratliff's specific need for care or that they played any role in his medical care. He alleges only in conclusory fashion that these individuals failed to provide him care or turned a blind eye. *Id.* at p. 17. Thus, the claims against these individuals are also **DISMISSED without prejudice**.

Finally, Ratliff alleges that Counselor Tate failed to properly investigate his grievance. He alleges that she noted he would be scheduled for a spinal injection, and he later learned that he was not scheduled for an appointment. But Tate's alleged failure to properly investigate and respond to the grievances does not state a claim. *See Owens*, 635 F.3d at 953. Thus, any claim against Tate is also **DISMISSED without prejudice**.

### DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

| | |
|---|---|
| **Count 1:** | **Eighth Amendment deliberate indifference claim against Dr. Meyers, Nurse Practitioner Wise, and Nurse Practitioner Luking for failing to provide Ratliff care for his spinal condition.** |
| **Count 2:** | **ADA and/or RA claim for defendants' failure to provide Ratliff with permits and assistive devices.** |
| **Count 3:** | **Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for having policies and practices that prevented Ratliff from receiving proper care.** |
| **Count 4:** | **Eighth Amendment conditions of confinement claim against John Doe #8, John Doe #9, and John Doe #10 for failing to fix the water leak in Ratliff's cell.** |
| **Count 5:** | **Eighth Amendment deliberate indifference claim against John Doe #8, John Doe #9, John Doe #10, Jane Doe #6, Jane Doe #7, and John Doe #1 for their response to Ratliff's fall on December 25, 2023.** |
| **Count 6:** | **Eighth Amendment deliberate indifference claim against Jane Doe #5 for the nurse's failure to treat Ratliff's injured shoulders on September 12, 2023.** |
| **Count 7:** | **First Amendment retaliation claim against Wise, Luking, Hinkle, Collins, John Doe #11, and John Doe #12 for failing to provide Ratliff with medical care and improperly searching his cell in retaliation for Ratliff complaining about inadequate medical care at the prison.** |
| **Count 8:** | **Eighth Amendment deliberate indifference claim against Hinkle, Collins, John Doe #11, and John Doe #12 (nurse) for failing to provide Ratliff with medical care on February 25, 2024.** |
| **Count 9:** | **Illinois medical negligence claim against Dr. Meyers, Nurse Practitioner Wise, Nurse Practitioner Luking, Jane Doe #5, Hinkle, Collins, John Doe #11, and John Doe #12 for failing to provide Ratliff with proper medical care.** |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Counts 1-3

In Ratliff's Counts 1, 2, and 3, he alleges that defendants failed to provide him with proper medical care for his back issues. Specifically, he alleges that he suffers from a chronic back condition and was previously recommended for spinal injections to treat the pain by an outside specialist. But Ratliff alleges that Dr. Percy Meyers, Nurse Practitioner Luking, and Nurse Practitioner Wise denied him care for his chronic back pain on numerous occasions. He was never scheduled for the prescribed spinal injections and was told multiple times that subsequent x-rays did not show any injury. He also alleges that he requested permits, including low gallery and low bunk permits, and assistive devices to alleviate his condition, to no avail. At this stage, Ratliff states a deliberate indifference claim in Count 1 against Meyers, Wise, and Luking. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).

His allegations also state a viable ADA and/or RA claim for defendants' failure to provide Ratliff with his requested permits and devices. *See Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the

---

[2] This includes any potential claim under the Fourteenth Amendment because Ratliff fails to indicate how the defendants violated the Fourteenth Amendment. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

ADA. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his/her official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity, as the proper defendant for Ratliff's ADA and/or RA claim.

Ratliff also alleges that the defendants' actions in denying him medical care was pursuant to policies and practices of Wexford Health Sources, Inc. Specifically, he alleges that Wexford had cost-cutting policies that led to the denial of his spinal injections. The corporation also had policies directing medical staff to provide the least amount of care to those inmates who were nearing their prison outdate. Ratliff further alleges that Wexford had a practice of understaffing the healthcare unit at the prison, which also led to delays in his care. Thus, Ratliff has adequately alleged a deliberate indifference claim in Count 3 against Wexford.

**Count 4**

Ratliff's Count 4 alleges that unknown correctional officers failed to remedy a leak in Ratliff's cell. Ratliff complained about water leaking in his cell, but the officers ignored his requests. Ratliff later slipped on the wet floor, injuring himself. At this stage, Ratliff states a viable deliberate indifference claim against the unknown officers for the conditions of his cell. But this claim is unrelated to Ratliff's claims regarding his chronic back pain and medical treatment. Thus, his claim against John Doe #8, John Doe #9, and John Doe #10 will be **SEVERED** into a new case.

### Count 5

In Count 5, Ratliff alleges that several officers, nurses, and other staff were deliberately indifferent to a fall that Ratliff suffered on December 25, 2023. Although he alleges that the John Doe Officers and Nurses questioned whether he was faking his injuries, he acknowledges that they called an emergency code, took him to the healthcare unit in a wheelchair for care, called the doctor for further care, and transported him back to his cell in a wheelchair. There are simply no allegations suggesting that any of the staff members acted with deliberate indifference in transporting him to the healthcare unit. Thus, Ratliff's claim in Count 5 against John Doe #'s 1, 8, 9, and 10, as well as Jane Doe #'s 6 and 7, is **DISMISSED without prejudice**.

### Count 6

Ratliff, however, states a claim for deliberate indifference against Jane Doe Nurse #5 who allegedly refused to provide Ratliff care for his injured shoulders in September 2023. Thus, Count 6 shall proceed against Jane Doe Nurse #5.

### Count 7

Ratliff adequately states a claim in Count 7 for retaliation. Ratliff alleges that Wise failed to provide him with care because he made complaints. He also alleges that after seeking medical care from Luking, she and Correctional Officer Hinkle conspired to improperly search his cell, humiliate him, and confiscate his pain medications. He alleges that Hinkle told him that they conducted the search of his cell because he wrote grievances and complaints. (Doc. 1, p. 27). Ratliff further alleges that Hinkle, John Doe

#11, Collins, and John Doe #12 (nurse) refused to provide him care after an injury because he filed grievances against them. At this stage, this is sufficient to state a retaliation claim. *See Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Thus, Count 7 shall proceed against Wise, Luking, Hinkle, John Doe #11, John Doe #12, and Collins.

### Count 8

Ratliff also states a claim against Hinkle, Collins, John Doe #11, and John Doe #12 for their failure to provide him with medical care after the fall in his cell.

### Count 9

Ratliff's medical malpractice claim in Count 9 derives from the same facts as his federal constitutional claims and will proceed against Dr. Meyers, Nurse Practitioner Wise, Nurse Practitioner Luking, Jane Doe #5, Hinkle, Collins, John Doe #11, and John Doe #12. To ultimately pursue this claim, before the completion of the summary judgment phase of the case, Ratliff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation against the defendant and a physician's report to support the assertions in the affidavit, pursuant to 735 ILL. COMP. STAT. § 5/2-622. *See Young v. United States*, 942 F.3d 349, 351-352 (7th Cir. 2019).

Finally, to the extent that Ratliff has raised claims against unknown officials, the Court **ADDS** the warden at Lawrence Correctional Center, Jeremiah Brown, to the case. He will remain in the case, in his official capacity only, for the sole purpose of responding to discovery aimed at identifying the unknown defendants.

**PENDING MOTIONS**

In addition to his Complaint, Ratliff has filed two motions requesting the assignment of counsel. (Doc. 7, 9). A district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, there is no constitutional or statutory right to counsel for a civil litigant. *See Stroe v. Immigration and Naturalization Services*, 256 F.3d 498, 500 (7th Cir. 2001); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Recruitment of counsel lies within the sound discretion of the trial court. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)).

In determining whether to recruit counsel, the Court is directed to make a two-fold inquiry: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654 (citing *Farmer v. Haas*, 990 F.2d 319, 321-322 (7th Cir. 1993)). The first prong of the analysis is a threshold question. If a plaintiff has made no attempt to obtain counsel on his own, the court should deny the request. *See Pruitt*, 503 F.3d at 655.

The Court finds that Ratliff has met his threshold burden of trying to obtain counsel on his own. As to his ability to represent himself, however, the Court notes that the case is in the early stages of the litigation process. Defendants have not yet been served nor have any Answers been filed in this case. Although Ratliff alleges that he has no formal education, suffers from mental health issues, and believes the issues are too complex for him to litigate on his own, the Court finds him capable of litigating the case

at this stage on his own. Once defendants have entered their appearance and filed Answers, the Court will enter a scheduling order setting forth a deadline for discovery. Should Ratliff experience difficulties at that time, he may renew his request for counsel. But there is simply no need for counsel at this stage of the litigation process. Thus, his requests for counsel (Doc. 7, 9) are **DENIED**.

## DISPOSITION

For the reasons stated above, Count 4 against John Doe #8, John Doe #9, and John Doe #10 is severed into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The motion to proceed *in forma pauperis* (Doc. 2); and
- The Complaint (Doc 1)

As to the remaining claims, Count 1 shall proceed against Dr. Meyers, Nurse Practitioner Wise, and Nurse Practitioner Luking. Count 2 shall proceed against Latoya Hughes (official capacity only). Count 3 shall proceed against Wexford Health Sources, Inc. Count 6 shall proceed against Jane Doe #5. Count 7 shall proceed against Wise, Luking, Hinkle, Collins, John Doe #11, and John Doe #12. Count 8 shall proceed against Hinkle, Collins, John Doe #11, and John Doe #12. Count 9 shall proceed against Dr. Meyers, Wise, Luking, Jane Doe #5, Hinkle, Collins, John Doe #11, and John Doe #12. Jeremiah Brown (official capacity only) is **ADDED** to the case to respond to discovery aimed at identifying the John/Jane Does. Count 5 against John Doe #'s 1, 8-10 and Jane Doe #'s 6-7, as well as all claims against the IDOC, Dr. Babich, J.B. Pritzker, Rob Jeffreys,

Dee Dee Brookhart, Cunningham, Jane Doe Assistant Warden, Warden Brown, Jane Does Nurses #'s 6, 7, 12, John Doe #'s 2, 3, 4, and Counselor Tate are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Dr. Meyers, Nurse Practitioner Wise, Nurse Practitioner Luking, Latoya Hughes (official capacity only), Wexford Health Sources, Inc., Hinkle, Collins, and Jeremiah Brown (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Ratliff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Ratliff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Because Ratliff's claims involve his medical condition and treatment, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA qualified protective order.

If judgment is rendered against Ratliff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Ratliff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: August 20, 2024.**

Digitally signed by Judge Sison
Date: 2024.08.20 11:45:45 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**